# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

DEVELOPERS SURETY AND )
INDEMNITY COMPANY, etc., )
                                          )
      Plaintiff, )
                                          )
v. ) CIVIL ACTION 16-0430-WS-N
                                          )
INDEPENDENT LIVING CENTER )
BUILDING CO., INC., etc., )
                                          )
      Defendant. )

## ORDER

This matter is before the Court on the motion of the defendant ("Center") to enforce settlement. (Doc. 91). Center seeks to enforce an asserted settlement between itself and the counterclaim-defendant ("Renew") and, as a result, obtain dismissal with prejudice of all claims as between Center and Renew. Renew has filed an objection and Center a reply, (Docs. 93, 95), and the motion is ripe for resolution.

According to its counterclaim, (Doc. 13), Center entered a contract with Renew to renovate a former church building purchased by Center. The plaintiff ("Developers"), as surety, issued a performance bond on behalf of Renew as principal. Center invoked the bond after Renew allegedly defaulted, but Developers refused to honor its obligations under the bond and instead filed this action seeking a declaratory judgment. Center counterclaimed against Developers for breach of contract, civil conspiracy and declaratory relief.[1] Center added Renew as a counterclaim defendant and asserted various claims. Developers filed no claims against Renew in this lawsuit; however, as discussed in more detail *infra*, Developers filed a separate action against Renew on November 8, 2017

---

[1] Center later agreed to dismissal of the conspiracy claim. (Doc. 37 at 3).

seeking indemnity. *Developers Surety and Indemnity Company v. Renew Maintenance & Construction Inc.*, Civil Action 17-0495-KD-N ("*Developers*").

At 2:42 p.m. on October 20, 2017, counsel for Center ("Townsend") e-mailed counsel for Renew ("Trice") to "advis[e] that [the Center] has come to a tentative agreement to settle its claims against [Developers]." (Doc. 91-2 at 1). Townsend proposed that, "if RMC can provide the ILC with $10,000, they will elect to dismiss their claims against them, with prejudice, under the assumption that RMC will similarly dismiss their claims against the ILC, with prejudice." (*Id*.). Center and Renew agree that this constituted an offer to settle and that Renew did not accept this offer.

Instead, at 11:04 a.m. on October 21, 2017, Trice responded as follows:

> Renew will agree to settle the case right now if all parties dismiss all of their claims with prejudice. Renew will not contribute $10,000 or any money to settle the case at this time. We believe ILC can get the building done with or without the $10,000 demanded. Please advise.

(Doc. 91-2 at 1). Center and Renew agree that this constituted a counter-offer by Renew. They disagree, however, as to the terms of Renew's offer. Center says the offer was for Center and Renew to settle their dispute by dismissing with prejudice their claims against each other. Renew says the offer was for all parties, including Developers, to dismiss with prejudice all claims, including the release of any unasserted claims.

On October 27, 2017, Townsend approached Trice at state court motion docket and told him that Center accepted Renew's offer to settle by Center and Renew dismissing their claims against each other with prejudice. (Doc. 91-1 at 2-3). Later that morning, Townsend e-mailed Trice and stated that, "[p]ursuant to our conversation, please be advised that the ILC has agreed to the below offer and will agree to settle the pending case against RMC to the extent both parties dismiss all of their claims against each other, with prejudice." (Doc. 91-2 at 1). Center asserts that both these communications constituted an acceptance of Renew's

2

counter-offer, forming a contract.  Renew responds that Center's purported acceptance did not match Renew's offer, such that no contract was formed.

"To be effective as an acceptance, any expression of assent restating the offer must not change the material terms of the offer." *Hall v. Integon Life Insurance Co.*, 454 So. 2d 1338, 1342 (Ala. 1984).  Any such change constitutes the purported acceptance a mere counter-offer, *Hardy Corp. v. Rayco Industrial, Inc.*, 143 So. 3d 172, 181 (Ala. 2013), and a rejection of the offer.  *Burbic Contracting Co. v. Cement Asbestos Products Co.*, 409 So. 2d 1, 4 (Ala. 1982).  The question is thus whether Center's purported acceptance altered the material terms of Renew's offer.  Plainly it did.

Center agreed only that it would dismiss with prejudice its claims against Renew in exchange for Renew dismissing with prejudice its claims against Center.  Renew, however, did not offer a two-way settlement.  By its express terms, Renew's offer required the participation of "all parties," thus necessarily including Developers.  Even assuming that Renew's offer did not require acceptance by both Center and Developers in order to become a contract, it patently required Center's agreement to the dismissal of Developers' claims in order to do so.  As is clear from Center's description of its purported acceptance, Center expressed no such agreement and thus altered by omission a material term of Renew's offer.

Center insists that the terms of Renew's offer extended only to the claims between these two parties, because the only claims that "remained unsettled and pending" as of October 21 were theirs *inter se*.  (Doc. 91 at 2, 5).  This statement, however, is plainly incorrect.  As to whether the claims between Center and Developers had been settled as of 11:04 a.m. on October 21, Townsend informed Trice at 2:42 p.m. on October 20 that the settlement between Center and Developers was merely "tentative," (Doc. 91-2 at 1), a qualifier inconsistent with a firm settlement, and Center offers no evidence either that its settlement had been

3

finalized only 20 hours later or that Renew knew it had been finalized.[2] As to whether Developers' claims against Center remained pending on October 21, they most certainly did; indeed, Center and Developers did not seek dismissal of those claims until November 1. (Doc. 90).

Apart from these difficulties, Center's argument depends on ignoring the phrase, "all parties," which it attempts to do by replacing "all" with "both." (Doc. 91 at 5). As discussed above, however, the offer cannot reasonably be read as Center wishes; the offer plainly requires an agreement to the dismissal with prejudice of Developers' claims.

In a related vein, Center suggests that, even if Renew's offer included as a term the dismissal with prejudice of Developers' claims (and it did), Center's failure to agree to that term is irrelevant because, by virtue of their settlement, Center and Developers had already agreed to such a dismissal, and Renew was aware of this. (Doc. 91 at 2, 5). As noted above, however, all Renew was aware of was Center's report of a "tentative" settlement with Developers, the terms of which were not disclosed. Thus, a dismissal with prejudice of Developers' claims was anything but a foregone conclusion as of the morning of October 21. Even if Center thought the term requiring dismissal with prejudice of Developers' claims was unimportant, likely to be satisfied anyway, or both, it has failed to demonstrate that Alabama law permitted it to withhold its assent to that or any other term of Renew's offer yet still secure a valid contract.

The foregoing is sufficient to require the denial of Center's motion. There is, however, an additional fatal flaw in its position. As noted, Renew's offer was to "settle the case right now if all parties dismiss all of their claims with prejudice." (Doc. 91-2 at 1). For reasons appearing below, the Court finds that

---

[2] On the contrary, counsel for Developers notified Trice on October 23 that it was "*in the process* of negotiating and finalizing a settlement" with Center, (Doc. 93-2 at 2 (emphasis added)), meaning the settlement was still not finalized two days after Renew's offer. Indeed, the settlement agreement was not executed until October 25. (*Developers*, Doc. 1-3 at 1).

4

Renew's offer required Developers to abandon, not just its filed claims against Center, but its unfiled claims against Renew for indemnity. Because neither Center nor Developers ever agreed to this term, no contract was formed.

As noted, this lawsuit was filed because Center called on Developers to honor its performance bond after Renew failed to complete its contract. Unsurprisingly, Renew (and two of its principals) had executed an indemnity agreement in favor of Developers, (*Developers*, Doc. 1-4), such that Developers could seek from Renew reimbursement of any payment by Developers to Center, as well as any litigation expense incurred by Developers relative to the performance bond. Although as of October 21 Developers had yet to file an indemnity claim in this lawsuit or another, it had made clear to Renew that it would insist on its rights under the indemnity agreement; in early October, Developers' counsel emailed Trice that Developers would front deposition costs but only under reservation of its "rights to pursue same from RMC and its indemnitors," because Renew was "obligated to reimburse DSIC for all of its losses and expenses." (Doc. 93-1). With this background understanding, which the parties shared, the obvious purpose of Renew's inclusion of "all parties" in its offer was to ensure that it would not be left exposed to an indemnity demand by Developers to recoup its supposedly imminent settlement payment to Center and/or its litigation costs.[3] The word "case" in the offer is thus naturally read as "dispute," and "all ... claims" naturally includes both causes of action already filed and claims contemplated but not yet formally asserted in litigation.[4]

Renew in its objection pointed out these circumstances and their impact on the reasonable construction of its offer, and Center presents no effective response. Its sole effort to avoid the obvious is its insistence that only a claim already filed

---

[3] This was not merely reasonable but prudent, as reflected by Developers' demand for indemnity of almost $700,000. (*Developers*, Doc. 1 at 4).

[4] Developers itself characterized its pre-filing expectation of reimbursement from Renew as its "indemnity claims." (Doc. 93-2 at 1).

5

can be "dismiss[ed]," as the offer provides; an unfiled claim, it says, can only be "released," not "dismissed." (Doc. 95 at 1). Were this single word the only evidence of the offer's meaning, Center might have a decent argument, but the offer as a whole, read in light of the parties' joint understanding of Renew's exposure to Developers' indemnity claim, renders Center's interpretation objectively unreasonable; in context, "dismiss ... with prejudice" is clearly used as a stand-in for formal abandonment of all claims, filed and unfiled.

The Court assumes that Center genuinely believed Renew's offer was merely to dismiss with prejudice its claims against Center in exchange for Center dismissing with prejudice its claims against Renew. Nevertheless, because Center's purported acceptance was limited to these terms even though Renew's actual offer included additional terms regarding Developers, Center did not effectively accept Renew's offer, and thus no contract was formed.

For the reasons set forth above, Center's motion to enforce settlement is **denied**.

DONE and ORDERED this 9th day of February, 2018.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE